**UNITED STATES BANKRUPTCY COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 11 |
| LITTLE WASHINGTON FABRICATORS, INC., | : |
| | : BANKRUPTCY NO. 22- |
| DEBTOR. | : |
| | : |

**MOTION OF THE DEBTOR AND DEBTOR IN POSSESSION FOR AUTHORITY TO (I) PAY PRE-PETITION WAGES AND (II) REQUEST FOR AN EXPEDITED HEARING, REDUCED NOTICE PERIOD AND LIMITED NOTICE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(c)(1) AND E.D. Pa. L.B.R. 5070(g)**

Little Washington Fabricators, Inc., by and through its proposed counsel, Ciardi Ciardi & Astin, hereby moves for authority to (I) pay pre-petition wages, and (II) requests an expedited hearing, reduced notice period and limited notice (the "Motion"), and in support hereof respectfully represents as follows:

## BACKGROUND

1. On March 22, 2022 (the "Petition Date"), Little Washington Fabricators, Inc. (the "Debtor") filed a voluntary petition under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

2. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. Sections 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. Section 157(b). Venue of this case is proper in this district pursuant to 28 U.S.C. Sections 1409 and 1409.

3. The Debtor remains in possession of its property and in control of its business as a Debtor-in-Possession.

4. The Debtor is a is a large metal fabricator which provides miscellaneous and structural steel for construction projects. The Debtor opened in 2012 in Gordonville, Pennsylvania with a small shop, four (4) employees and one truck. Today, the Debtor leases a 32,000 square foot shop in Christiana, Pennsylvania with a 3 acre yard where it now employees thirty (30) employees, has 8 trucks and sales over $25 million.

5. Starting in April of 2020, as a result of the Covid-19 pandemic, the Debtor began experiencing severe price escalations to its supplies. As the Covid-19 pandemic continued, the Debtor continued to experience work stoppages on its jobs, new job site requirements that required additional costs and imposed restrictions, and supply issues that were unprecedented and unable to be accounted for by the Debtor. As a result, the Debtor was upside down on many jobs that commenced prior to the start of the Covid-19 pandemic. Due to the language in the Debtor's contracts, the Debtor was unable to re-quote the jobs and the Debtor's requests for cost adjustments were denied by the general contractors on the jobs. As a result, the Debtor was forced to continue to work on jobs that were quoted 2 years ago with steel prices that were no longer relevant and far short of the current prices. The price escalations and supply issues pushed current jobs out far longer than anticipated. Consequently, the Debtor began coming up short on projects that had started prior to the Covid-19 pandemic. To further complicate the jobs, payments from contractors became slower and more unpredictable and more and more contractors failed to pay their subcontractors and suppliers due to issues they were also having.

5. As of the Petition Date, the Debtor employed 3 employees (the "LW Employees") and Little Washington Fab Services 2, LLC employed 24 employees (with LW Employees, collectively, the "Employees"). Little Washington Fab Services 2, LLC ("LWFS2") is a limited

liability company that was set up for the payment of the Amish workers.[1] The LWFS2 account has no other purpose and is reserved only for payroll and related taxes. Amish workers are exempted from Social Security and Medicare if certain conditions are met. One of those conditions is that the worker must be paid by an Amish person. LWFS2 is owned solely by Jonathan Stoltzfus who is Amish. All exempted employees must qualify with IRS form 4029 which the Debtor has on file. In the ordinary course of business, the Debtor transfers the exact amount of payroll with taxes to LWFS2 and LWFS2 issues payroll checks to the workers. Including the payment to LWFS2, the Debtor issues payroll checks on a weekly basis, totaling approximately $30,000 in gross wages per pay period.

## THE RELIEF REQUESTED AND THE REASONS THEREFOR

6. Accordingly, by and through this Motion, the Debtor hereby seeks authority to pay pre-petition wages accruing from March 13, 2022 through March 21, 2022[2] along with all accrued Employee Benefits, defined *infra*, incurred in the ordinary course of business during that time period.

7. In order to maintain employee morale and preserve the Debtor's workforce at this critical time, to reduce the disruption caused by the bankruptcy filing on the Debtor's business operations, and to minimize the personal hardship the Debtor's employees will suffer if its employee-related obligations are not paid when due, the Debtor requests entry of an order authorizing, but not requiring, the Debtor (a) to pay, in the ordinary course of business, all

---

1 Although LWFS2 was set up to pay the Amish workers, non-Amish workers are paid through that entity.
2 The Debtor pays its Employees weekly. The normal pay period runs from Sunday to Saturday. By and through this Motion, the Debtor is seeking to pay one full pre-petition payroll and two (2) days of the payroll accruing from March 20, 2022 and ending March 26, 2022. The Debtor will pay the two (2) stub days (March 20 and March 21, 2022) in the regularly scheduled payroll set for April 1, 2022.

Unpaid Compensation and Employee Benefits[3]; (b) to honor and take all necessary actions to continue in the ordinary course of business until further notice (but not to assume), the Employee Benefits that were in effect as of the filing of this chapter 11 bankruptcy case; and (c) to make, in the ordinary course of business, all normal and customary deductions and withholdings and pay all taxes associated with the Debtor's obligations to employees.

8. The Debtor's next payroll is scheduled to occur on Friday, March 25, 2022. As of the Petition Date, the Debtor estimates that it owes its Employees $32,235.51 in unpaid, gross wages accruing from March 13, 2022 through March 19, 2022 and $6,210.89 for wages accruing on March 20 and March 21, 2022 (the "Unpaid Compensation"). A listing of the employees is not attached due to privacy concerns. Items of Unpaid Compensation were outstanding on the Petition Date because the Debtor's payroll is paid weekly for the preceding week.

9. The Debtor also maintains various plans and policies to provide employees with medical, dental, drug prescription, life and accidental death or dismemberment insurance, retirement savings, workers' compensation and other similar benefits (collectively, the "Employee Benefits"). The Debtor wishes to continue offering the Employee Benefits to the Employees and their families. Any failure to pay the Employee Benefits would be injurious to employee welfare, morale and expectations. The Debtor is current on monies owed under the various Employee Benefit programs.

---

[3] As referenced above, the Debtor pays its Employees weekly. The normal pay period runs from Sunday to Saturday. The Debtor is seeking to pay one full pre-petition payroll from March 13, 2022 through March 19, 2022 and two (2) day of the following payroll accruing from March 20, 2022 and ending March 26, 2022.

10. The Unpaid Compensation coupled with the Employee Benefits payable to any one employee does not exceed $13,650.00, the amount to which such employees would be entitled with administrative priority under section 507 of the Bankruptcy Code.

11. The Debtor does not seek authorization to assume any contracts relating to senior executives currently employed by the Debtor. Further, the Debtor does not seek to pay any pre-petition compensation or other amounts to executives. No officer or shareholder will receive unpaid pre-petition compensation but will be paid for post-petition services.

12. As a result of the commencement of the chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its prepetition obligations regarding Unpaid Compensation and Employee Benefits (collectively, the "Prepetition Employee Obligations"), and the checks, wire transfers and direct deposit transfers issued in respect of the Prepetition Employee Obligations will be dishonored.

13. The payment of the Prepetition Employee Obligations is justified under Section 105(a) of the Bankruptcy Code and the well-established "necessity of payment doctrine."

14. Under the "necessity of payment doctrine" and Section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors, specifically including payment of prepetition claims of employees. See, e.g., Miltenberger v. Logansport Ry. Co., 106 U.S. 286, 312 (1882) (stating that payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); Gregg v. Metro. Trust Co., 197 U.S. 183, 187 (1905) (stating that "the payment of the employees of the [rail]road is more certain to be necessary in order to keep it running than the payment of

any other class of previously incurred debts."); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (finding that payment of prepetition wages, salaries, reimbursable business expenses and health benefits to active employees of debtor airline authorized); In re Chateaugay Corp., 80 B.R. 279, 286-88 (S.D.N.Y. 1987), appeal dismissed, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing debtor, prior to plan stage of case, to pay prepetition wages, salaries, expenses and benefits); In re Gulf Air, Inc., 112 B.R. 152, 153-54 (Bankr. W.D. La. 1989) (permitting payment of prepetition wages, benefits and expenses as necessary to maintain going concern values and to assist reorganization efforts).

15. The continued operation of the Debtor's business depends on the retention and motivation of its Employees. The Debtor believes that, to avoid employee resignations and to maintain employee morale, it is critical that it be authorized to pay each of its Employees all compensation amounts that have been earned under the Debtor's prepetition contractual obligations or practices.

16. It is equally essential that the Debtor take all actions reasonably necessary to continue on an uninterrupted basis in the ordinary course of business all of the employment policies that were in effect prior to the Petition Date.

17. Moreover, the Debtor estimates that the amounts it seeks to pay herein are entitled to priority under Sections 507(a)(4) and (a)(5) of the Bankruptcy Code. Section 507(a)(4) of the Bankruptcy Code grants priority to employee claims for "wages, salaries, or commissions, including vacation, severance and sick leave pay" earned within one hundred and eighty (180) days before the filing of the Petition up to $13,650.00 per employee.

18. Similarly, section 507(a)(5) of the Bankruptcy Code provides that claims for contributions to certain employee benefit plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $13,650.00 less any amounts paid pursuant to Section 507(a)(4) of the Bankruptcy Code.

19. Thus, granting the relief sought herein would affect only the timing and not the amount of payment of the Prepetition Employee Obligations to the extent they constitute priority claims. Many employees live from paycheck to paycheck and rely exclusively on receiving their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses. These Employees will be exposed to significant financial and health-related problems if the Debtor is not permitted to pay certain of the unpaid expenses and Prepetition Employee Obligations, particularly wages and other Employee Benefits.

20. Moreover, the Debtor believes that if it is unable to honor the Prepetition Employee Obligations, employee morale and loyalty will be jeopardized at a time when it is most critical. If the Debtor is not authorized to pay for the Employee Benefits, then many of the Employees may not be reimbursed or otherwise have their health benefit claims paid. In addition, certain Employees may become primarily obligated for the payment of these claims in cases where health care providers have not been reimbursed and may face having their health care services terminated. The Debtor believes that such uncertainty will cause significant anxiety at precisely the time the Debtor needs its Employees to perform their jobs at peak efficiency.

21. The Debtor further requests that the Court authorize and direct the bank at which the Debtor maintains the account from which the Debtor's payroll obligations are disbursed, to

honor and pay all prepetition and post-petition checks issued or to be issued and fund transfers requested or to be requested, by the Debtor in respect of the Prepetition Employee Obligations. The Debtor also seeks authority to issue new post-petition checks or fund transfer requests with respect to prepetition obligations that may have been dishonored by the bank. The relief requested herein is essential and necessary to the Debtor's continued operations in chapter 11 and to an effective reorganization.

### **REQUEST FOR EXPEDITED CONSIDERATION**

22.  The Debtor requests expedited treatment in connection with the Motion because it requires the ability to make immediate payment of its payroll. Accordingly, the Debtor requests that a hearing on its Motion at the convenience of the Court but **prior to Friday March 25, 2022** so payroll can be made.

23.  As of the filing of this Motion, no trustee, examiner or creditor's committee has been appointed in this Chapter 11 case. Notice of this Motion has been given via facsimile or electronic mail to the Office of the United States Trustee and the Debtor's Top Twenty Unsecured Creditors. The Debtor has no secured lenders and is current on all tax obligations. Accordingly, the Debtor submits that no other notice need be given in light of the exigencies of the circumstances and the irreparable harm to the Debtor, its estate and all parties in interest that would ensue if the relief requested herein is not granted.

24.  No previous request for the relief sought herein has been made to this or any other Court.

25. Prior to filing this Motion, counsel for the Debtor contacted Counsel for the Office of the United States Trustee to advise him of the request for an expedited hearing and the relief requested therein.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order in the form attached hereto and for such other and further relief as this Court deems just and proper.

Dated: March 22, 2022

CIARDI CIARDI & ASTIN

/s/
Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551

Proposed Counsel for the Debtor