## UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| : | CHAPTER 11 |
| LITTLE WASHINGTON FABRICATORS, : | |
| INC., : | BANKRUPTCY NO. 22-10695(PMM) |
| DEBTOR. : | |
| : | |

## MOTION OF THE DEBTOR AND DEBTOR IN POSSESSION FOR AUTHORITY TO (I) PAY PRE-PETITION CREDITORS WITH LIEN RIGHTS ON CONTRACTS BEING ASSUMED, AND (II) REQUEST FOR AN EXPEDITED HEARING, REDUCED NOTICE PERIOD AND LIMITED NOTICE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(c)(1) AND E.D. Pa. L.B.R. 5070(g)

Little Washington Fabricators, Inc., by and through its proposed counsel, Ciardi Ciardi & Astin, hereby moves for authority to (I) pay pre-petition creditors with lien rights on contracts being assumed, and (II) requests an expedited hearing, reduced notice period and limited notice (the "Motion"), and in support hereof respectfully represents as follows:

### BACKGROUND

1. On March 22, 2022 (the "Petition Date"), Little Washington Fabricators, Inc. (the "Debtor") filed a voluntary petition under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

2. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. Sections 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. Section 157(b). Venue of this case is proper in this district pursuant to 28 U.S.C. Sections 1409 and 1409.

3. The Debtor remains in possession of its property and in control of its business as a Debtor-in-Possession.

4. The Debtor is a large metal fabricator which provides miscellaneous and structural steel for construction projects. The Debtor opened in 2012 in Gordonville, Pennsylvania with a small shop, four (4) employees and one truck. Today, the Debtor leases a 32,000 square foot shop in Christiana, Pennsylvania with a 3 acre yard where it now employees thirty (30) employees, has 8 trucks and sales over $25 million.

5. Starting in April of 2020, as a result of the Covid-19 pandemic, the Debtor began experiencing severe price escalations to its supplies. As the Covid-19 pandemic continued, the Debtor continued to experience work stoppages on its jobs, new job site requirements that required additional costs and imposed restrictions, and supply issues that were unprecedented and unable to be accounted for by the Debtor. As a result, the Debtor was upside down on many jobs that commenced prior to the start of the Covid-19 pandemic. Due to the language in the Debtor's contracts, the Debtor was unable to re-quote the jobs and the Debtor's requests for cost adjustments were denied by the general contractors on the jobs. As a result, the Debtor was forced to continue to work on jobs that were quoted 2 years ago with steel prices that were no longer relevant and far short of the current prices. The price escalations and supply issues pushed current jobs out far longer than anticipated. Consequently, the Debtor began coming up short on projects that had started prior to the Covid-19 pandemic. To further complicate the jobs, payments from contractors became slower and more unpredictable and more and more contractors failed to pay their subcontractors and suppliers due to issues they were also having.

## THE RELIEF REQUESTED AND THE REASONS THEREFOR

6.  Accordingly, by and through this Motion, the Debtor hereby seeks authority, but not required, to pay pre-petition creditors with lien rights on contracts being assumed (the "Lien Right Creditors"). A true and correct copy of the list of the Lien Right Creditors with amounts owed relating to each job is attached hereto and incorporated herein as Exhibit "A." The Debtor has also attached a chart illustrating the amount of the receivable versus the lien claims (the "Equity Chart") as they relate to each contract. A true and correct copy of the Equity Chart is attached as Exhibit "B." The Debtor will continue to review its contracts to determine if an additional motion is necessary.

7.  The Debtor is exclusively a subcontractor to a general contractor or a direct prime contractor to an owner of a project.

8.  In both Pennsylvania and New Jersey, the Debtor is obligated to pay its subcontractors and suppliers who have lien rights or claims against general contractors or owners in order to receive payment.

9.  The failure to pay its subcontractors and suppliers for work performed on current projects will allow owners and general contractors to withhold payment.

10. Pre-Petition, the Debtor entered into some joint-check or direct payment agreements with owners of projects and general contractors on projects. Pursuant to various joint check and direct payment agreements, after direct payments to suppliers and subcontractors, the Debtor is paid the balance of what is due from owners and general contractors.

11. In order to provide confidence to its contract counter-parties, to continue cash flow without interruption, and to complete pending projects, the Debtor requests authority to

continue its joint check and direct payment arrangements on a post-petition basis on contracts which the Debtor intends to assume.

12. The Debtor requests authority to continue to pay subcontractors, suppliers, and union benefits, if any, on current projects which the Debtor intends to assume through owner/general contractor direct pay or joint check arrangements regardless of whether the underlying agreements and/or obligations are pre- or post-petition.

13. Because state law specifically permits such payment arrangements and permits owners and general contractors to withhold payment, such a process is appropriate and necessary.

14. Under the "necessity of payment doctrine" and Section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors, specifically including payment of prepetition claims of employees. See, e.g., Miltenberger v. Logansport Ry. Co., 106 U.S. 286, 312 (1882) (stating that payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); Gregg v. Metro. Trust Co., 197 U.S. 183, 187 (1905) (stating that "the payment of the employees of the [rail]road is more certain to be necessary in order to keep it running than the payment of any other class of previously incurred debts."); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (finding that payment of prepetition wages, salaries, reimbursable business expenses and health benefits to active employees of debtor airline authorized); In re Chateaugay Corp., 80 B.R. 279, 286-88 (S.D.N.Y. 1987), appeal dismissed, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing debtor, prior to plan stage of case, to pay

prepetition wages, salaries, expenses and benefits); In re Gulf Air, Inc., 112 B.R. 152, 153-54 (Bankr. W.D. La. 1989) (permitting payment of prepetition wages, benefits and expenses as necessary to maintain going concern values and to assist reorganization efforts).

15. The continued operation of the Debtor's business depends on the payment of all creditors with lien rights.

### REQUEST FOR EXPEDITED CONSIDERATION

16. The Debtor requests expedited treatment in connection with the Motion because it requires the ability to make payment to its subcontractors. Accordingly, the Debtor requests that a hearing on its Motion be held at the convenience of the Court **by April 1, 2022** so creditors can be paid in the ordinary course of business.

17. As of the filing of this Motion, no trustee, examiner or creditor's committee has been appointed in this Chapter 11 case. Notice of this Motion has been given via facsimile or electronic mail to the Office of the United States Trustee and the Debtor's Top Twenty Unsecured Creditors. The Debtor has no secured lenders and is current on all tax obligations. Accordingly, the Debtor submits that no other notice need be given in light of the exigencies of the circumstances and the irreparable harm to the Debtor, its estate and all parties in interest that would ensue if the relief requested herein is not granted.

18. No previous request for the relief sought herein has been made to this or any other Court.

19. Prior to filing this Motion, counsel for the Debtor contacted Counsel for the Office of the United States Trustee to advise him of the request for an expedited hearing and the relief requested therein.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order in the form attached hereto and for such other and further relief as this Court deems just and proper.

Dated: March 24, 2022

CIARDI CIARDI & ASTIN

/s/ *(signature)*

Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
1905 Spruce Street
Philadelphia, PA  19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551

Proposed Counsel for the Debtor