# UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:** : | |
| : | **CHAPTER 11** |
| **LITTLE WASHINGTON FABRICATORS,** : | |
| **INC.,** : | **BANKRUPTCY NO. 22-10695(PMM)** |
| **DEBTOR.** : | |
| : | |

### FIRST OMNIBUS MOTION OF THE DEBTOR AND DEBTOR IN POSSESSION FOR AUTHORITY TO REJECT CERTAIN EXCUTORY CONTRACTS PURSUANT TO 11 U.S.C. §§ 105 AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 6004(h) AND 6006(a) AND (f).

Little Washington Fabricators, Inc., by and through its counsel, Ciardi Ciardi & Astin, hereby moves for authority to reject certain executory contracts and all ancillary contracts related thereto pursuant to 11 U.S.C. §§105 and 365 and Federal Rules of Bankruptcy Procedure 6004(h) and 6006(a) and (f) (the "Motion"), and in support hereof, respectfully represents as follows:

## BACKGROUND

1. On March 22, 2022 (the "Petition Date"), Little Washington Fabricators, Inc. (the "Debtor") filed a voluntary petition under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

2. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. Sections 157 and 1334. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. Section 157(b). Venue of this case is proper in this district pursuant to 28 U.S.C. Sections 1409 and 1409.

3. The Debtor remains in possession of its property and in control of its business as a

Debtor-in-Possession.

4. The Debtor is a large metal fabricator which provides miscellaneous and structural steel for construction projects. The Debtor opened in 2012 in Gordonville, Pennsylvania with a small shop, four (4) employees and one truck. Today, the Debtor leases a 32,000 square foot shop in Christiana, Pennsylvania with a 3 acre yard where it now employees thirty (30) employees, has 8 trucks and sales over $25 million.

5. As set forth in the Debtor's first day pleadings, as a result of the Covid-19 pandemic, the Debtor began experiencing severe price escalations to its supplies. As the Covid-19 pandemic continued, the Debtor continued to experience work stoppages on its jobs, new job site requirements that required additional costs and imposed restrictions, and supply issues that were unprecedented and unable to be accounted for by the Debtor. As a result, the Debtor was upside down on many jobs that commenced prior to the start of the Covid-19 pandemic.

6. In order for the Debtor to successfully reorganize, the Debtor has identified a number of executory contracts where the costs for the Debtor to continue on the project far exceed the amount due and owing to the Debtor. Specifically, through this Motion, the Debtor seeks to reject the following executory contracts and any ancillary contracts related to the specific contract, to the extent that such ancillary contract exists (collectively, the "Rejected Contracts"). Those contracts are as follows:

| Contract Number | Job Name | Contract location | General Contractor |
|---|---|---|---|
| 21-018 | South Pointe Village | 210 Orr Drive, Willow Street, PA | CCS Building Group |
| 21-022 | CVS Cherry Hill | 1900 Marlton Pike | Builders, Inc. |

|        |                          |                                                       |                                                                        |
|--------|--------------------------|-------------------------------------------------------|------------------------------------------------------------------------|
|        |                          | East, Cherry Hill NJ                                  |                                                                        |
| 21-026 | G&T Industries           |                                                       | Quandel Construction Group, Inc.                                       |
| 21-028 | Blue Springs Farm Project | 8069 Corner Road, Mechanicsburg, PA                   | Stewart & Tate                                                         |
| 21-034 | Amazon Jessup            | 45 Valley View Drive, Jessup, PA                      | Irwin & Leighton                                                       |
| 21-036 | Luxor Lansdale           |                                                       | Berks Ridge Company Enterprises, Inc.                                  |
| 21-042 | Ellis Preserve Phase 2   | 3819 West Chester Pike, Newtown Square, PA            | High Construction Company Inc.                                         |
| 21-056 | Porsche Easton Warehouse | 170 Commerce Lane, Easton, PA                         | Quandel Construction Group, Inc.                                       |
|        | McCaffreys of West Windsor | 335 Princeton-Highstown Road, West Windsor New Jersey | Michael B and Karen M Palmeri Enterprises, Inc. t/a Lynmar Builders |

7. On April 1, 2022, the Debtor sent out a notice of rejection to each of the general contractors (the "Notices of Rejection") on all of the Rejected Contracts except for the McCaffreys of West Windsor contract. True and correct copies of the Notices of Rejection are

attached hereto as Exhibit "A."

8. Accordingly, the Debtor believes that the Rejected Contracts are not only not needed for a successful reorganization, but also will hinder the Debtor's ability to successfully reorganize if such contracts were not rejected.

## THE RELIEF REQUESTED AND THE REASONS THEREFOR

9. Accordingly, by and through this Motion, the Debtor hereby seeks authority to reject the executory contracts listed in paragraph 6 above.

10. Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the Court's approval, may assume or reject any executory contract or unexpired lease[.]" *See* 11 U.S.C § 365(a). A debtor's decision to reject an executory contract or unexpired lease is governed by the deferential "business judgment" standard. *See In re Nickels Midway Pier, LLC*, 341 B.R. 486,500-01 (D.N.J. 2006), *aff'd*, 255 F. Appx. 633 (3rd Cir. 2007); *see also, In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3rd Cir. 1992) (assumption or rejection of a lease "will be a matter of business judgment by the bankruptcy court"); *Sharon Steel Corp.v. Nat'l Fuel Gas Distr. Corp.*, 872 F.2d 36, 39-40 (3rd Cir. 1989) (same criterion).

11. Courts in the Third Circuit have defined "business judgment" as "the presumption that in making business decisions not involving direct self-interest or self-dealing, corporate directors act on an informed basis, in good faith, and in the honest belief that their actions are in the corporations best interest." *In re Network Access Sols. Corp.*, 330 B.R. 67., 75 (Bankr. D. Del. 2005).

12. The "business judgment" standard is not a strict test; it merely requires a showing by the debtor that the rejection of an executory contract will benefit the debtor's estate.

*See, e.g. In re Decora Indus., Inc.*, No.00-4459JJF, 2002 WL 32332749, at *8 (D. Del. May 20, 2002) (stating that "[a] debtor satisfies the 'business judgment' test when it determines, in good faith, that assumption of an executory contract will benefit the estate and unsecured creditor"); *In re Meehan*, 59 B.R. 380, 385 (E.D.N.Y. 1986)("The business judgment test is a flexible one . . .."); *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) (stating that the business judgment standard "is not a difficult standard to satisfy and requires only a showing that rejection will benefit the estate"); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (observing that the business judgment standard is satisfied, and that a debtor's Codecision to assume or reject must be "summarily affirmed," where such decision is not "the product of 'bad faith, or whim or caprice'"). Accordingly, courts generally will not second guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease.

13.     Rejection of the Rejected Contracts is an appropriate exercise of the Debtor's sound business judgment and will reduce the administrative burden on the estate. The Rejected Contracts are financially burdensome and no longer necessary to the continued operations of the Debtor's business. Furthermore, the Debtor believes that the Rejected Contracts have no marketable value that could be generated through assumption and assignment to an alternate party through a sale or similar process. Accordingly, the Debtor's continued performance under the Rejected Contracts would constitute an unnecessary depletion of value of the Debtor's estate and is not in the Debtor's business interest.

14.     While section 365 of the Bankruptcy Code does not specifically address whether the Court may order rejection to be effectively retroactively, courts have held that

rejection retroactive to a date prior to the entry of the order authorizing rejection may be appropriate. *See, e.g., Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) (holding that when principles of equity dictate, a bankruptcy court may approve rejection pursuant to section 365 (a) retroactive to the motion filing date); *In re Rupari Holding Corp.*, No. 17-10793(KJC), 2017 WL 5903498, at *6 (Bankr. D. Del. Nov. 28, 2017) (authorizing rejection of certain executory employment contracts *nunc pro tunc* to the date the debtors ceased operations and no longer had a need for employee services upon a review of equities of the circumstances); *BP Energy Co. v. Bethlehem Steel Corp.*, No. 02-6419, 2002 WL 315 48723, at *3 (S.D.N.Y. Nov. 15, 2002) (concluding that a bankruptcy court has the authority to assign a retroactive rejection date under section 365(a)); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that a bankruptcy court may approve a retroactive rejection).

15.     Courts have approved the rejection of contracts and leases *nunc pro tunc* to the petition date or other dates. *See, e.g., In re O'Neill Theatres, Inc.*, 257 B.R. 806,807 (Bankr. E.D. LA 2000) (permitting the debtor to reject the lease of non-residential real property retroactively to the petition date); *In re Amber's stores,* 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (finding that rejection of lease retroactive to petition date was warranted); *In re Fleming Cos., Inc.*, 304 BR 85, 96 (Bankr. D. Del. 2003) (stating that rejection has been allowed *nunc pro tunc* to the date the property was surrendered).

16.     Consistent with the foregoing case law, rejection of the Rejected Contracts as of the filing of the Motion is appropriate. The Debtor has been in communication with each of the general contractors of the Rejected Contracts. On April 1, 2022, the Debtor sent out Notices

of Rejection for all of the Rejected Contract, except for the McCaffrey's of West Windsor contract, and was advised that the Debtor was rejecting their contract.

## REQUEST FOR WAIVER OF STAY PURSUANT TO FED. R. BANKR. P. 6004(h)

17.     Pursuant to Federal Rule of Bankruptcy Procedure 6004(h), the Debtor seeks a waiver of any stay of the effectiveness of an order granting this Motion, to the extent that it applies to the relief requested in this Motion. Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of an order, unless the Court orders otherwise." Fed. R. Bankr. P. 6004(h). The relief requested in this Motion is essential to avoid the potential accrual of additional unnecessary costs and expenses. Accordingly, the Debtor submits that, to the extent Bankruptcy Rule 6004(h) applies, ample cause exists to justify a waiver of the 14-day stay.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order in the form attached hereto authorizing the Debtor to reject the Rejected Contracts *nunc pro tunc* to the filing of the Motion and for such other and further relief as this Court deems just and proper.

Dated: April 12, 2022         CIARDI CIARDI & ASTIN

*/s/Nicole M. Nigrelli*
Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551

Counsel for the Debtor