# Exhibit "A"

# Commercial Lease

This lease is made between Mill Street Real Estate, LLC, a Pennsylvania Limited Liability Company, 150 Culbertson Run Road, Downingtown, PA 19335, herein called the Lessor, and Little Washington Fabricators, Inc., a Pennsylvania Corporation, herein called Lessee.

Lessee hereby offers to lease from Lessor the Premises situated in the Borough of Christiana, County of Lancaster, Commonwealth of Pennsylvania, being a portion of the one-story block commercial building located on the west side of the property located at 52 Mill Street, Christiana, PA, together with approximately 37,176 +/- square feet of parking adjacent to the building, consisting of.

**Upon the following TERMS AND CONDITIONS:**

1. *Term and Rent:* Lessor demises the above Leased Premises for a term of 10 years, commencing on March 8, 2016, and terminating on March 8,2026, as provided herein, at the annual rental of One Hundred and Eleven Thousand, Five Hundred and Twenty-Eight Dollars ($111,528.00) payable in equal monthly installments of Nine Thousand Two Hundred and Ninety-Four Dollars ($9,294.00) in advance on the first day of each month for that month's rental, during the term of this lease.

2. *Use.* Lessee shall use and occupy the Leased Premises for the operation of a steel fabricating/manufacturing business. The Leased Premises shall be used for no other purpose without Lessor's prior written consent. Lessor represents that the Leased Premises may lawfully be used for such purpose.

3. *Care and Maintenance of Premises.* Lessee shall, at his own expense and at all times, maintain the Leased Premises in good and safe condition, including plate glass, electrical wiring, plumbing and heating installations and any other system or equipment upon the Leased Premises, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. Lessee shall be responsible for all repairs required, excepting the roof, exterior walls, structural foundations and:

4. *Alterations:* Lessee shall not, without first obtaining the consent of Lessor, make any alterations, additions, or improvements, in, to or about the Leased Premises.

5. *Ordinances and Statutes.* Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the Leased Premises, occasioned by or affecting the use thereof by Lessee.

6. *Assignment and Subletting.* Lessee shall not assign this lease or sublet any portion of the Leased Premises without prior written consent of the Lessor, which shall not be unreasonably withheld. Any such assignment or subletting without consent shall be void and, at the option of the Lessor, may terminate this lease.

7. *Utilities.* All applications and connections for necessary utility services on the Leased Premises shall be made in the name of Lessee only, and Lessee shall be solely liable for utility charges as they become due, including those for heating, water, sewer, snow removal, garbage/trash removal, electricity, and telephone services.

8. *Property Taxes.* All property taxes allocable to the Leased Premises shall be paid by Lessee within ten days upon receipt from Lessor of such taxes allocated to the Leased Premises.

9. *Casualty Insurance.* Lessor shall obtain and maintain in place a policy of property insurance insuring against all casualty risks with extended coverage in an amount and with such coverage as may be acceptable to Lessor PROVIDED HOWEVER, that Lessee shall reimburse to Lessor, within five days of presentation of an invoice to Lessor, that portion of such insurance policy premium which Lessor shall calculate based on the percentage that the Leased Premises represents of the entire building wherein is located the Leased Premises, on a relative square footage basis.

10. *Entry and Inspection.* Lessee shall permit Lessor or Lessor's agents to enter upon the Leased Premises at reasonable times and upon reasonable notice, for the purpose of inspecting the same,

and will permit Lessor at any time within sixty (60) days prior to the expiration of this lease, to place upon the Leased Premises any usual "To Let" or "For Lease" signs, and permit persons desiring to lease the same to inspect the Leased Premises thereafter.

11. *Possession.* If Lessor is unable to deliver possession of the Leased Premises at the commencement hereof, Lessor shall not be liable for any damage caused thereby, nor shall this lease be void or voidable, but Lessee shall not be liable for any rent until possession is delivered. Lessee may terminate this lease if possession is not delivered within Ten (10) days of the commencement of the term hereof.

12. *Indemnification of Lessor.* Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the Leased Premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claim for damages no matter how caused.

13. *Liability Insurance.* Lessee, at its expense, shall maintain plate glass and public liability insurance including bodily injury and property damage insuring Lessee and Lessor with minimum coverage as follows:

    a.  Lessee shall, during the entire term of the Lease keep in full force and effect a policy of public liability insurance with respect to Property and the business operated by Lessee in the Property and which the limits of the general liability shall be in the minimum amount of One Million Dollars ($1,000,000.00) combined single limit, naming Lessor as additional insured. Such coverage shall include a broad form general liability endorsement. The policy shall contain a clause that the Lessee will not cancel or change the insurance without first giving the Lessor ten (10) days prior written notice.

14. *Eminent Domain.* If the Leased Premises or any part thereof or any estate therein, or any other part of the building materially affecting Lessee's use of the Leased Premises, shall be taken by eminent domain, this lease shall terminate on the date when title vests pursuant to such taking. The rent and any additional rent, shall be apportioned as of the termination date, and any rent paid for any period beyond that date shall be repaid to Lessee. Lessee shall not be entitled to any part of the award for such taking or payment in lieu thereof, but Lessee may file a claim for any taking of fixtures and improvements owned by Lessee, and for moving expenses.

15. *Destruction of Premises.* In the event of a partial destruction of the Leased Premises during the term hereof, from any cause, Lessor shall forthwith repair the same provided that such repairs can be made within sixty (60) days under existing governmental laws and regulations, but such partial destruction shall not terminate this lease, except that Lessee shall be entitled to a proportionate reduction of rent while such repairs are being made, based upon the extent to which the making of such repairs shall interfere with the business of Lessee on the Leased Premises. If such repairs cannot be made within said sixty (60) days, Lessor, at his option may make the same within a reasonable time, this lease continuing in effect with the rent proportionately abated as aforesaid, and in the event that Lessor shall not elect to make such repairs which cannot be made within sixty (60) days, this lease may be terminated at the option of either party. In the event that the building in which the Leased Premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease, whether the Leased Premises be injured or not. A total destruction of the building in which the Leased Premises may be situated shall terminate this lease.

16. *Lessor's Remedies on Default.* If Lessee defaults in the payment of rent, or any additional rent or defaults in the performance of any of the other covenants or conditions hereof, Lessor may give Lessee notice of such default and if Lessee does not cure any such default with five (5) days after the giving of such notice (or if such other default is of such nature that it cannot be completely cured within such period, if Lessee does not commence such curing within such five (5) days and thereafter proceed with reasonable diligence and in good faith to cure such default), then Lessor may terminate this lease on not less than five (5) days notice to Lessee to quit and vacate the Leased Premises. On the date specified in such notice the term of this lease shall terminate, and Lessee shall then quit and surrender the Leased Premises to Lessor, but Lessee shall remain liable as hereinafter provided. If this lease shall have been so terminated by Lessor, Lessor may at any time thereafter resume possession of the Leased Premises by any lawful means and remove Lessee or other occupants and their effects. No failure to enforce any term shall be deemed a waiver.

17. *Security Deposit.* Lessee shall deposit with Lessor on the signing of this lease, the sum of Nine Thousand Two Hundred Ninety-Four Dollars ($9,294.00) as security deposit for the performance of Lessee's obligations under this lease, including without limitation the surrender of possession of the Leased Premises to Lessor as herein provided. If Lessor applies in any part of the deposit to cure any default of Lessee, Lessee shall on demand deposit with Lessor the amount so applied so that Lessor shall have the full deposit on hand at all times during the term of this lease.

18. *Parking.* Lessor will provide for Lessee's exclusive use a parking area of approximately 64,000 square feet adjacent to the Leased Premises.

19. *Attorney's Fees:* In case suit should be brought for recovery of the Leased Premises or for any sum due hereunder, or because of any act which may arise out of the possession of the Leased Premises, by either party, the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee.

20. *Notices.* Any notice which either party may, or is required to give, shall be given by mailing the same, postage prepaid, to Lessee at the Leased Premises, or Lessor at the address shown below, or at such other places as may be designated by the parties from time to time.

21. *Heirs, Assigns, Successors.* This lease is binding upon and inures to the benefit of the heirs, assigns and successors in interest to the parties.

22. *Option to Renew.* Provided that Lessee is not in default in the performance of this lease, Lessee shall have the option to renew the lease for an additional term of Ten (10) years commencing at the expiration of the initial lease term. All of terms and conditions of the lease shall apply during the renewal term except that the annual rent shall be increased to One Hundred Twenty Thousand Four Hundred Twenty-Five Dollars ($120,425.00) payable in equal monthly installments of Ten Thousand Thirty-Five Dollars and Forty-Two Cents ($10,035.42). The option shall be exercised by written notice given to Lessor not less than Sixty (60) days prior to the expiration of the initial lease term. If notice is not given in the manner provided herein within the time specified, this option shall expire.

23. *Subordination.* This lease is and shall be subordinated to all existing and future liens and encumbrances against the property

24. *Entire Agreement.* The foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties. The following Exhibits, if any, have been a part of this lease before the parties' execution hereof:

Signed this __10__ day of ___Feb.___, year of 2016.

By: _____   By: _____

By: _____   By: _____